ESTATE OF MARGARET MCALLEN FAIRBANKS, DECEASED, ARGYLE ASHLEY MCALLEN AND ELDRED ELMER MCALLEN, INDEPENDENT EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 428. Promulgated February 15, 1944.

*Vernon B. Hill, Esq.*, for the petitioners.
*Samuel G. Winstead, Jr., Esq.*, for the respondent.

### OPINION.

BLACK, *Judge*: The Commissioner has determined a deficiency of $4,440.30 in income tax against the estate of Margaret McAllen Fairbanks, deceased, for the year 1940. The deficiency is due to one adjustment made by the Commissioner in the return filed for the estate by the executors. That adjustment was explained in the deficiency notice as follows:

(a) On line 16 of your return for the year 1940 you claimed a deduction of income distributable to the beneficiaries in the total amount of $20,677.91 which has been found to include an amount of $19,255.58 received from oil rentals and alleged to have been credited to the accounts of the five principal beneficiaries under the will of the decedent who died January 27, 1940. The claimed deduction of $19,255.58 is disallowed for the reason that the Estate was still in the period of administration at December 31, 1940, and the amount was not paid to nor irrevocably placed to the credit and subject to the demand of the beneficiaries in the year 1940 within the meaning of section 162 of the Internal Revenue Code.

Petitioners, who are the executors of the estate of Margaret McAllen Fairbanks, deceased, by appropriate assignments of error contest the correctness of the foregoing adjustment. The facts have all been stipulated and we adopt these as our findings of fact. We summarize these facts for the purpose of this opinion as follows:

The decedent was a resident of Texas, and died January 27, 1940, and her will was probated March 21, 1940, in Texas. Petitioners are managing her estate independently of the Probate Court. The estate during 1940 was in the hands of the executors. The income tax return of the estate for the year 1940 was filed with the collector at Austin, Texas. The principal beneficiaries of decedent's will were the four children of testatrix by a former marriage and her surviving second husband, G. D. Fairbanks.

At the time of her death testatrix had under lease to the Sun Oil Co. for oil and gas development two tracts of land which belonged to her separate estate. These leases provided for annual delay rentals of $18,000 and $7,801.90, respectively. The Sun Oil Co., lessee, deposited these two amounts during December 1940 in a Houston, Texas, bank

and the bank, without any authorization from the executors and without their knowledge, credited these amounts to a joint account which required the signature of the executors and G. D. Fairbanks before any withdrawals could be made.

The only checks pertinent to this case which the executors could get G. D. Fairbanks to sign with them prior to December 1941 on the joint account so created were checks totaling $6,546.32 which were issued to pay the 1940 state, county, and school district taxes on the leased land. There were no other ad valorem taxes due on the leased land. The delay rentals of a total of $25,801.90, less the taxes paid of $6,546.32, or a balance of $19,255.58, remained on deposit in the Houston bank from December 1940 to December 1941 in the above mentioned joint account on which G. D. Fairbanks refused to sign any checks with the executors except those above mentioned.

The facts show that the $19,255.58 in question was drawn out of the Houston bank by agreement of the interested parties in 1941 and expended in the following manner: The Federal estate tax return filed by the executors was during the middle of 1941 audited by agents of the Bureau of Internal Revenue and additional estate taxes were determined in November 1941 in the amount of about $29,725.03, to the assessment of which the executors agreed. At this time the funds in the South Texas Commercial National Bank totaled about $24,484.16 in two accounts, one of which contained the deposit of the oil rentals which neither Fairbanks nor the executors could withdraw without the signature of the other party. Fairbanks had been insisting since the death of his wife, and was still insisting, that there was no Federal estate tax due and that he had other claims for large sums against the estate. The collector of internal revenue, at the request of the executors, again threatened to issue a warrant of distraint against the joint bank accounts above mentioned. Fairbanks refused to sign any checks or recognize that any Federal estate tax was owed. The executors entered into negotiations with the Houston bank to put up a surety bond or United States Government obligations to secure the release of the joint accounts to them, but on December 1, 1941, before these negotiations were completed they entered into an agreement with Fairbanks, the substance of which was that Sun Oil Co. was to deposit (and did deposit) the sum of $6,672.01, which it had been holding since before the death of Mrs. Fairbanks, in the South Texas Commercial National Bank of Houston, Texas; this amount was paid to the collector of internal revenue by joint checks of the executors and Fairbanks on the Houston bank; in addition to said amount, the executors and Fairbanks signed checks for $5,636.85 and $7,960.35 to the collector of internal revenue, making total payments to the collector at this time from these bank accounts in the South Texas Commercial National Bank at Houston, Texas, of $20,269.21;

the executors and Fairbanks signed a check on the Houston bank account payable to G. D. Fairbanks personally, in the amount of $10,886.96, which came entirely out of the account deposited by the Sun Oil Co. as delay rentals in November and December 1940. These checks exhausted both the deposits in the above named bank to the joint credit of the executors and Fairbanks. The payment of $10,886.96 to Fairbanks was not on account of his part of the delay rentals paid by the Sun Oil Co. in November and December 1940, but represented one-half of certain amounts which were on hand at the time of Mrs. Fairbanks' death and are not involved in this proceeding.

After certain general legacies of money not here involved, the will of the testatrix left all her lands (which were her separate property), including the property on which the delay rentals were paid, to her four children absolutely, and disposed of the delay rentals in the following language:

11th. All monies due or received in the future in oil, gas, or sulphur revenues from the lands which I now possess, shall be divided into five equal parts and paid one part to each of my four children and one part to my husband until his death. The individual right to such revenues shall not be disposed of except by consent of the ones affected.

> \*        \*        \*        \*        \*        \*        \*

The legacies of oil, gas and sulphur revenues shall be paid when received, after the pro rata tax is deducted in an amount only necessary to preserve the royalties, but other legacies may be paid at such reasonable time as the interest of the estate demands.

During 1940 the executors notified each of the five beneficiaries that his share of the delay rentals paid in 1940 was as follows:

| | |
|---|---:|
| G. D. Fairbanks | $3,851.12 |
| Argyle Ashley McAllen | 3,851.12 |
| Eldred Elmer McAllen | 3,851.12 |
| Salome Marguerite Scanlan | 3,851.11 |
| Mildred Mary Chapa | 3,851.11 |
| Total | 19,255.58 |

The executors advised each legatee that he should show in his 1940 income tax return such amount as income for 1940 received from the estate of Margaret McAllen Fairbanks. Each of the individuals named above except G. D. Fairbanks returned said sum as income received in 1940 in his 1940 income tax return and paid the tax thereon, which taxes have not been refunded. G. D. Fairbanks did not include any of the money in question in his 1940 income tax return, but made thereon the following notation:

My deceased wife's estate is not settled yet. This report represents property in my possession not including $25,801.90 oil lease revenue, the ownership of which is in dispute. It also does not include income of property in control of her executors which is also in dispute and I have no record of it.

With the exception of G. D. Fairbanks, none of the five legatees or beneficiaries named above has ever demanded payment from the executors of his or her share of the moneys in question and payment has never been made, except to Fairbanks. On July 6, 1943, and not before, G. D. Fairbanks demanded payment of his share of the moneys in question from the executors, and it was promptly paid to him by the executors and they hold his receipt therefor.

In the 1940 income tax return filed by the estate the executors reported the receipt of the delay rentals in question totaling $25,801.90, deducted the ad valorem taxes paid of $6,546.32, and reported the balance of $19,255.58 as having been credited to the beneficiaries in the proportions named above. The respondent disallowed the claimed deduction of $19,255.58 and gave as his reasons for such disallowance the statement in his deficiency notice which we have quoted above.

Throughout the taxable year here in question the estate of decedent was operated, managed, controlled, and supervised by petitioners. At all times since the death of the testatrix the executors have had in their hands assets of the estate not the subject matter of any specific devise or legacy more than sufficient to discharge all debts, taxes of every kind, and expenses of administration. The petitioners have paid the general property ad valorem taxes on the property covered by the oil, gas, and sulphur leases mentioned above from the delay rentals received under those leases because they were directed to do so by the will.

Since the death of testatrix, and prior thereto, the executors and G. D. Fairbanks have not been on good terms. On March 16, 1942, he sued the executors for large sums (not including the delay rentals herein involved), and the executors filed a cross-action for construction of the will. The suit of Fairbanks was dismissed by him before trial, but the cross-action of the executors for construction of the will proceeded to trial, and a judgment favorable to the executors was appealed to the higher courts by Fairbanks. The construction placed upon the will by the appellate court was that contended for by the executors. The date of the decision of the higher court was March 24, 1943. See *Fairbanks* v. *McAllen*, 170 S. W. (2d) 581.

Petitioners' first and main contention is that under the terms of the will the delay rentals from the two tracts of land owned by decedent as her separate property at the time of her death were to be currently distributed by her executors, after the payment of ad valorem taxes on the land, to her husband, G. D. Fairbanks, and to her four children, one-fifth to each. Petitioners contend that under the provisions of section 162 (b), Internal Revenue Code, the estate is entitled to a deduction of the amount of these delay rentals after the payment of ad valorem taxes and that the amounts distributable to the beneficiaries are taxable to the beneficiaries whether actually distributed to them

or not. In this case there was clearly no actual distribution of the income in question within the taxable year to any of the beneficiaries named in the will.

Petitioners contend in the alternative that, if under the facts and circumstances of this case the delay rentals were not currently distributable to the beneficiaries of such income, nevertheless petitioners credited to the account of each beneficiary his respective proportion of such net delay rentals after provision for the payment of taxes, and that the estate is entitled to a credit under the provisions of section 162 (c), Internal Revenue Code, of the amounts so credited, totaling $19,255.58. If petitioners are sustained in their primary contention it will, of course, be unnecessary to discuss their alternative contention. The provisions of the Internal Revenue Code upon which the petitioners rely are printed in the margin.[1]

Petitioners' argument is to the effect that the language in decedent's will which reads: "All monies due or received in the future in oil, gas, or sulphur revenues from the lands which I now possess, shall be divided into five equal parts and paid one part to each of my four children and one part to my husband until his death," constituted specific legacies. Page on Wills, vol. 4, sec. 1394, p. 112, defines a specific legacy as follows:

A specific legacy is a gift of a specific thing, or of some particular portion of the testator's estate, which is so described by the testator's will as to distinguish it from other articles of the same general nature. A specific legacy differs from a general legacy in that it is not intended by testator to be paid out of his estate generally, but is to be paid solely by delivering to the beneficiary the specific thing given by will, as distinguished from a designated value, quantity, and the like.

A specific legacy is given by words which describe and identify the specific property which testator gives to the beneficiary.

We agree with petitioners that the legacies in question were specific legacies.

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

*     *     *     *     *     *     *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

Petitioners further contend that not only were the bequests of the delay rentals to decedent's four children and her husband specific legacies, but that the income from these delay rentals, after the payment of ad valorem taxes on the lands from which the rents were derived, was currently distributable. In support of this contention petitioners call attention to the following provision in the will:

The legacies of oil, gas, and sulphur revenues shall be paid when received, after the pro rata tax is deducted in an amount only necessary to preserve the royalties, * * *

We think the foregoing provision in decedent's will does provide for the current distribution of these delay rentals after the deduction of ad valorem taxes, to the beneficiaries entitled to receive them. Mertens Law of Federal Income Taxation, vol. 6, sec. 36.30, says:

Rule as to Income on Specific Legacies. Where a will creates the right in the specific legatee during the period of administration to the income from the property bequeathed from the date of the death of the decedent, and there are ample funds from which the debts and costs of administration may be paid, the income is taxable to the beneficiary and not to the estate. * * *

It seems clear from the facts which have been stipulated in this proceeding that the assets of the estate were ample to pay all debts of decedent and costs of administration without resorting to the delay rentals covered by the specific bequest. Therefore, if these delay rentals had been paid by the Sun Oil Co. to petitioners as the independent executors of the estate in December 1940 and the ownership of such payments had not been in legal dispute, we think such delay rentals, after the deduction of ad valorem taxes, would have been distributable income within the meaning of section 162 (b) and would have been deductible by the estate and taxable to the beneficiaries, whether actually distributed or not. But these delay rentals were not paid to petitioners as executors, but, on the contrary, were paid by the Sun Oil Co. to the South Texas Commercial National Bank of Houston, Texas, and were deposited in that bank to a new account, "G. D. Fairbanks and Estate of Margaret McAllen Fairbanks, Deceased." It is clear that none of such money could be drawn out in 1940 without the joint signatures of G. D. Fairbanks and the executors of the estate. The executors were claiming that Fairbanks was entitled to only one-fifth of this amount after the deduction of ad valorem taxes, and apparently Fairbanks was contending that he had not elected to take under decedent's will and that he was entitled to one-half of these rentals, after the deduction of taxes, in his own right and that the estate was indebted to him in other large amounts and therefore he had some kind of a claim on the entire amount of these delay rental funds.

Regardless of the precise nature of his claims, it is clear that he was making adverse claims and refusing to sign checks, and under

these circumstances, considering the fact that the money was deposited in a joint bank account to the credit of G. D. Fairbanks and to the estate and that none of the money could be withdrawn without the signatures of both parties to the account, we do not think it can be held that the $19,255.58 which is here in question was income distributable to the beneficiaries in 1940. The executors could not have distributed the money to the beneficiaries if they had wanted to.

In I. T. 1733, C. B. II-2, p. 169, the Bureau of Internal Revenue held:

Where there is a legal dispute as to the proper distribution of a portion of the income of a trust, which trust, on its face, provides for the periodical distribution of the entire net income, the portion of the income of the trust withheld by the trustee pending the termination of the litigation is not in fact distributable to either beneficiary, and is to be accounted for by the trustee in a return on Form 1040 or 1040A filed by him for the trust estate as an entity.

In the course of I. T. 1733 it is said:

* * * It seems clear, however, that in order to be taxable to the beneficiary the income must be in fact distributable to him, it must be his for the mere asking; that is, the income must be at least constructively received by him. It is not believed that the courts would look with favor upon an attempt to tax as income to the beneficiary any income of a trust of which he could not, by any act of his own, obtain possession. With regard to the income withheld by the trustee pending the termination of the dispute as to its ownership, it can not be said, therefore, that such income is in fact distributable either to D or C.

While, of course, this administrative ruling contained in I. T. 1733 is of no force and effect if it is wrong, we do not think it is wrong. We think it states the correct rule. Therefore, we think it is clear that petitioners are not entitled to any deduction under section 162 (b).

There is an important difference, however, between the facts in the instant case and the facts in I. T. 1733 above, in which the Internal Revenue Bureau made its quoted ruling. In I. T. 1733 the trust had actually received the 15 percent of the income which it could not distribute on account of the legal dispute which existed between the respective claimants. It was held that the income represented by this 15 percent was taxable to the trust and not to the beneficiaries. In the instant case the $19,255.58 in question was not received in 1940 by petitioners representing the estate. It was deposited in a Houston bank to the joint credit of G. D. Fairbanks and the estate of Margaret McAllen Fairbanks, and the executors could not draw out any of this money without the joint signature of G. D. Fairbanks, and throughout 1940 he was refusing to agree that the executors should have any of it. The only checks that he would sign in 1940 were checks to pay the ad valorem taxes on the two tracts of land, and

the amounts represented by these checks are not in controversy in this proceeding.

The situation which we have in the instant case is in some important respects similar, we think, to the facts of *Sara R. Preston*, 35 B. T. A. 312. In that, case we held that where two attorneys performed services for clients and received a check in payment therefor payable to the order of both, who could not agree as to the amount to which each was entitled, and the check was deposited in a bank to the joint account of both and there was drawn from the joint account during the taxable year such amount as each conceded the other entitled to, the balance to be drawn only upon settlement of the differences between them, each attorney on a cash receipts and disbursements basis was required to include in gross income only the cash withdrawn for his separate use. It is true, of course, that in the *Preston* case the taxpayers were individuals, while here the taxpayer is an estate in the process of administration, but we think that makes no difference. The rules with respect to the receipt of income are the same in both instances.

In the instant case the Sun Oil Co. did not pay the delay rentals over to petitioners. If it had done so and petitioners had had the untrammeled use of the income, it would have had to go into their gross income for taxation purposes under the Supreme Court's decision in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, regardless of the fact that G. D Fairbanks was making claim to it. But it was not paid to petitioners in that manner. The Sun Oil Co. deposited the delay rentals in a joint bank account in the manner which we have already described, and petitioners could not withdraw any of this money without G. D. Fairbanks' consent, and he refused his consent in 1940 as to the $19,255.58 which the Commissioner has added to petitioners' income and upon which the deficiency in tax is based. This money was withdrawn from the bank account in 1941 by the agreement and consent of the parties and part of it was used to pay a deficiency in estate tax due by the estate of Margaret McAllen Fairbanks and part was paid to G. D. Fairbanks, not as delayed rentals due him, but in settlement of another claim which he held against the estate. We express no opinion as to who was taxable on this $19,255.58, or in what proportions, when it was drawn out of the bank account in 1941 We do not have that year before us. But we do hold that this $19,255.58 was not taxable to the estate in 1940, because it did not receive it in that year. *Sara R. Preston, supra.* In thus deciding we have assumed that the income tax return of the estate for 1940 was filed on the cash basis. The case has been submitted as if that were a fact, and we have no reason to believe otherwise.

Petitioners in their brief have not relied upon the ground upon

which we decide the case in their favor. They have relied upon section 162 (b) and (c). However, the facts have been stipulated, and under these undisputed facts and the applicable law we hold that there is no deficiency. Having thus held, it of course becomes unnecessary to consider petitioners' alternative contention.

*Decision will be entered for the petitioners.*