JOSEPH M. ROEBLING, PETITIONER, ET AL.[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30678, 30679.[1] Promulgated July 24, 1952.

---

[1] Proceedings of the following petitioners are consolidated herewith: Ruth M. Roebling, Docket No. 30680; Ferdinand W. Roebling, III, Docket No. 30681; and Ferdinand W. Roebling, III, and Estate of Mary S. Roebling, Deceased, Ferdinand W. Roebling, III, Administrator, Docket No. 30682.

*Harold R. Medina, Jr., Esq.,* and *Albert Rosenblum, Esq.,* for the petitioners.

*Maurice S. Bush, Esq.,* for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The only issue presented in these proceedings is to whom the income arising from dividends on Class B preferred stock of the Bank should be taxed. The dividends in question were paid to the decedent's estate in 1941 and in the years of 1943 to 1948, inclusive. The estate reported the dividends as income for tax purposes. The respondent has determined that the income is taxable to the petitioners. The petitioners contend that the income was taxable to the estate under the provisions of section 161 (a) of the Internal Revenue Code [2] because the estate was in the process of administration during the taxable years involved.

Most of the estate was distributed by 1940 but the Class B preferred shares of the Bank were retained by the executors. The petitioners argue that this stock was kept intact by the executors in order to recoup the $1,000,000 invested by their father in 1934. The petitioners further argue that their father loaned the money to the Bank to help that institution during the depression. They contend that the loan merely took the form of a stock investment. We cannot agree. No promise, express or implied, was made by the Bank to pay back any specific sum to the decedent or his estate. The basic elements of a loan and a debt have not been established. The shares of stock received by petitioners' father were made retirable at a certain amount but no debt relationship was spelled out. The R. F. C. required the investment to be made in preferred stock junior to the issue received by that agency. The decedent's motive may have been to put sufficient funds in the hands of the Bank to enable it to secure the R. F. C. funds and survive the depression. The method employed to advance these funds was, however, an investment in stock and not a loan. The executors did not hold the stock during the years in question to collect a debt owed to decedent or his estate.

The petitioners contend that the stock was kept in a single block in order to realize $1,000,000 upon the shares which had little, if any, value when received. The stock had been valued at $100,000 for estate tax purposes but no dividends had been received prior to 1941. Thus, the estate, it is said, remained in the process of administration from 1942 to 1948 for the purpose of collecting an asset. In this respect, it must be borne in mind, however, that the $1,000,000 to be received on

---

[2] SEC. 161. IMPOSITION, OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\*     \*     \*     \*     \*     \*     \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

\*     \*     \*     \*     \*     \*     \*

retirement of the stock was not a then present asset owned by the estate. The stock itself was an estate asset but the retirement payment was no more than a possibility. The stock possessed a possible future value of $1,000,000 if the Bank prospered sufficiently to retire the issue and if it determined to do so. Before retirement could occur, several requisites contained in the amended Articles of Association had to be met. The executors held the stock as a block with the hope, and after 1946, with the expectation, of receiving the retirement payment. However, the hope of recovering a greater amount if the Bank was able to retire the stock does not mean that the executors must wait for this contingency to occur. The stock itself had little value when received. No market for it existed even in 1940 The $1,000,000 retirement payment cannot be classified as an asset of the estate to be collected by the executors.

The administration of an estate cannot be prolonged indefinitely or long after any need for it exists. In such an instance the administration may be deemed terminated for tax purposes. *William C. Chick*, 7 T. C. 1414, affd. 166 F. 2d 337. Regulations 111, section 29.162–1, provide that:

> * * * The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. * * *

This portion of the Regulations was approved in *Estate of J. P. Armstrong*, 2 T. C. 731. In a case before this Court the Court may determine the time actually required to perform the ordinary duties pertaining to administration. *Marin Caratan*, 14 T. C. 934. According to petitioners, in the instant case, the administration of decedent's estate continued from 1936 through 1948. We are of the opinion that petitioners, on whom rested the burden of proof, have presented no valid or compelling reason to justify the extension of the administration into any of the taxable years. An executor cannot extend the period of administration by engaging in activities which are not part of his administrative duties. *Josephine Stewart*, 16 T. C. 1, affd. 196 F. 2d 397. The estate was not, during this period, engaged in the collection of an asset, the payment of a debt or any of the ordinary duties of administration. Unlike the situation in *Estate of Isadore Zellerbach*, 9 T. C. 89, affd. 169 F. 2d 275, the estate liabilities had been paid prior to the taxable years. Moreover, the process of awaiting retirement of the stock could have been carried out as well by the same parties following distribution of stock. *Alma Williams*, 16 T. C. 893.

We do not have here, as in *Frederich* v. *Commissioner*, 145 F. 2d 796, the continuation of administration over a considerable period under the direction and approval of a state court. The process of awaiting retirement of the stock for 14 years was neither necessary nor reasonably related to the administration of the estate. The criterion, as we see it, is not as petitioners contend, analogous to the "business purpose" test but is an "administrative purpose" test.

The petitioners urge that it was necessary to retain the stock in a single block to insure the control which flowed from ownership of the shares. The 50,000 shares of preferred stock and the small number of common shares held by the estate were a minority of the Bank's shares outstanding. The R. F. C. owned approximately 10 times as many shares, each similarly entitled to one vote. The R. F. C. may not in fact have imposed and exercised its control over Bank policies but this does not establish a basis for assuming that the estate would control the Bank in future years and bring about the retirement of its stock. Whatever control was exercised by the estate similarly could have been exercised after distribution. The Roebling family has been united in the voting of its stock in John A. Roebling's Sons Company though ownership was scattered. No obstacle appears to the continued voting of the 50,000 Class B preferred shares of the Bank as a block by the two executors and their mother after distribution. No condition upon retirement of the Class B preferred shares prevented distribution of the stock. Not only did ownership of the shares bear no relationship to retirement of the stock but we fail to see any possible adverse effect upon the chances of retirement if the shares were distributed to the beneficiaries in their individual capacity. Other available methods of proceeding existed.

The petitioners argue that the executors feared that Ruth M. Roebling would dispose of her distributive share of the stock and thus jeopardize the chances of retiring the stock. This fear that one beneficiary might sell her share of the assets upon distribution appears to have little relation to the executors' duties of administration. Moreover, there is serious doubt that this fear was justified. No market existed for the stock and it became productive of yearly income through dividends after 1940. In this regard, it should be noted that Ruth M. Roebling sold two houses but sold none of the stock in John A. Roebling's Sons Company. Here, as in *Alma Williams, supra*, we reach the conclusion, in view of all the facts, that the period of administration and settlement of the estate had expired previous to the taxable years and that the income should be taxed accordingly.

In the event that we reach the aforestated conclusion, the petitioners contend that the residuary beneficiaries could not be taxed on the dividends under the provisions of sections 162 (b) and 162 (c), I. R. C.[3] There is no doubt that the dividends were not paid or credited to the petitioners within the terms of section 162 (c), I. R. C. An estate is entitled to a deduction under section 162 (b), I. R. C., on income which is to be distributed currently by the fiduciary to the legatees but the amount so allowed as a deduction is to be included in the net income of the legatees whether distributed to them or not. By the terms of the statute, "income which is to be distributed currently" includes income which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. If the period actually required for performance of the ordinary duties of administration of the estate had terminated and no administrative reason exists why the assets should not be distributed, the income thereof becomes currently distributable and is taxable to the beneficiary under section 162 (b), I. R. C. *Estate of W. G. Farrier*, 15 T. C. 277. In this instance, even prior to the termination of administration, the executors could have distributed the stock to the beneficiaries if they desired so to do. This was not true in *Estate of Margaret McAllen Fairbanks*, 3 T. C. 260, cited by petitioners. We have held the period of administration of the estate to have terminated prior to the taxable years in question. The income arising from the dividends, being currently distributable, is properly taxed to the petitioners.

*Decisions will be entered for the respondent.*

---

[3] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary;