ESTATE OF J. F. HARGIS, F. E. HARGIS, ADMINISTRATOR, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26474.[1]   Promulgated January 30, 1953.

*Paul Port, Esq.*, for the petitioners.
*Joseph P. Crowe, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith : Estate of Mary M. (Mrs. J. F.) Hargis, F. E. Hargis, Administrator, Docket No. 26475 ; F. E. Hargis, Docket Nos. 26476 and 31694 ; and Ruth Hargis, Docket No. 31695.

846

OPINION.

Van Fossan, *Judge:* The first issue for determination is whether all the income from the community property of J. F. Hargis and

Mary M. Hargis for the year 1946 is to be taxed to the Estate of J. F. Hargis, or divided between his estate and Mary M. Hargis or her estate.[2] J. F. Hargis died in December 1945, devising all of his estate to his widow, Mary H. Hargis. She died intestate in the next month, January 16, 1946. The income received during 1946 was almost entirely from the community property previously owned by J. F. Hargis and his wife. The question presented has been recently determined by this Court with regard to the income from Texas community property. *Estate of J. T. Sneed, Jr.*, 17 T. C. 1344. We there reviewed the prior decisions and their history and held that the estate of the deceased husband is taxable upon only one-half of the community property during the period of administration. We find here no sufficient distinction to justify a different result. We are therefore of the opinion that the respondent erred in his determination that all of the 1946 income from community property should be taxed to the Estate of J. F. Hargis alone.

The second issue is whether the income reported by the estates of J. F. Hargis and Mary M. Hargis for the year 1947 through July 31 and August 8, respectively, is taxable to F. E. Hargis, the sole heir, and his wife, as distributees, because the period of administration of the estates had terminated in 1947. *Hazel Kirk Carlisle*, 8 T. C. 563, affd. 165 F. 2d 645. In 1947 F. E. Hargis, the administrator of the two estates, filed final accountings with the Texas court stating that all known debts and expenses of the two estates had been paid and that the estates were subject to being closed. On July 31, 1947, the court found that there was no necessity for continuing the administration of the Estate of J. F. Hargis, approved the final account, closed the estate, discharged the administrator and released his bondsman. On August 8, 1947, similar actions were taken in the Estate of Mary M. Hargis. Federal income tax returns were then filed marked "Final." Oklahoma administration proceedings for the Estate of Mary M. Hargis were begun on March 18, 1946, and terminated September 20 of the same year. After August 8, 1947, the administrator of the two estates prepared tax returns, engaged in conferences concerning Federal and state taxes, collected rents, sold leases, closed the Oklahoma administration proceedings for the Estate of J. F. Hargis in August 1948, and paid legal fees and taxes for the estates.

The period of administration is the time required by the administrator to carry out the ordinary duties of administration, in par-

---

[2] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\*       \*       \*       \*       \*       \*       \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate ; and

ticular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose whether longer or shorter than the time specified by statute. Regulations 111, sec. 29.161–2; *William C. Chick*, 7 T. C. 1414, affd. 166 F. 2d 337. The petitioners F. E. Hargis and Ruth Hargis contend that the periods of administration did not terminate until the Oklahoma administration was completed in August 1948. The respondent argues that the administration periods terminated in August 1947. At the time the Texas administration proceedings were closed in August 1947, the ordinary duties pertaining to the administration of the two estates had been carried out. All debts and expenses had been paid excepting certain taxes and legal fees. Final accountings were filed and accepted by the Texas court which ordered the estates closed, the administrator discharged and his bondsman released. During 1947 final Federal income tax returns for the two estates were filed by the administrator. It does not appear that any outstanding assets remained uncollected after 1947 excepting rents, royalties, and other income.

The respondent possesses the authority to determine that an estate is no longer in the process of administration for tax purposes despite the fact that state administration proceedings have not as yet terminated. *Alma Williams*, 16 T. C. 893; *Joseph M. Roebling*, 18 T. C. 788. Here the Texas administration proceedings were closed in 1947. There appears to us no valid reason why the period of administration did not then terminate. The activities carried on in connection with the estates after 1947 were not such as would require the further existence of the period of administration. It is true that the Oklahoma administration proceeding for the Estate of J. F. Hargis was not closed until August 31, 1948. However, the Oklahoma proceeding was merely ancillary and pertained to property of a value of $4,825 in an estate possessing community property of a value of $222,275.56. Here the periods of administration were both practically and legally closed in 1947. Albeit the periods of administration were unusually brief, we find no basis to extend the period of administration of either estate into 1948 and therefore conclude that the periods of administration terminated in the year 1947.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

HILL, *J.*, dissents.

———

OPPER, *J.*, concurring: The question on the second issue is whether the income of the two Hargis estates for the first seven months or so of 1947 is taxable to the estates' legatees. I concur in the present result because I think it required under the 1942 amendment to section

162 (b) whether or not the administration of the estates technically terminated in that year.

As the *Carlisle* case [1] points out, the sentence added in 1942 to section 162 (b) reads as follows: "* * * As used in this subsection, 'income which is to be distributed currently' includes income for the taxable year of the estate or trust which, *within the taxable year, becomes payable to the legatee,* heir, or beneficiary." (Emphasis added.) The effect of this definition under the remaining provisions of section 162 (b) was to render such income available as a deduction to the estate but to require that it be "included in computing the net income of the legatees * * * whether distributed to them or not." [2]

The report of the Senate Finance Committee (Rept. No. 1631, 77th Cong., 2d Sess.), phrases the purpose of the amendment as follows: "* * * to include in *the income of a legatee or beneficiary the income of the estate or trust for its taxable year which, within such taxable year, becomes payable to the legatee or beneficiary even though it then becomes payable as part of an accumulation of income held until the happening of some event which occurs within the taxable year."* (Emphasis added.)

It is true that in *Hazel Kirk Carlisle, supra,* the "event" which occurred "within the taxable year" was the formal termination of administration of the estate. That is, to be sure, thought of by the Senate Finance Committee as the case "usually" to be found, so described by it, in language quoted in the *Carlisle* case (p. 367), as "where accumulated income of an estate is paid to a residuary legatee upon termination of the estate * * *." (Senate Finance Committee Report, op. cit.) But it seems evident that both language and purpose are applicable to other situations, of which this seems to me one.

The present record shows that the Harris County (Texas) Court not later than August 8, 1947, "ordered a distribution of the assets." Although the statement of facts does not so state explicitly, the stipulation shows that at about that time the estate funds, presumably including all net income for the current year, were transferred from an account entitled "F. E. Hargis, Administrator" to "F. E. Hargis,

---

[1] *Hazel Kirk Carlisle,* 8 T. C. 563, affd. (C. A. 6), 165 F. 2d 645.

[2] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

Special." The legatees thereby became entitled to distribution of all such estate funds, including current income.

This seems to be precisely the case to which the statutory provision was directed. I accordingly think it unnecessary to deal with such difficult subjects as whether a primary administration can formally terminate while an ancillary proceeding is still pending, and whether such matters as computation and payment of estate taxes do not constitute a continuing administration.

KERN, MURDOCK, TURNER, TIETJENS, RAUM, and WITHEY, JJ., agree with this concurring opinion.

