OPINION. Kern, Judge: The first problem to be met in this proceeding is to ascertain the year in which the period of the administration of Levi-ton’s estate was completed. We are not helped in this connection by the records of the State court in which the administration was conducted. No entries were made in such records during the taxable years, no accounting was ever filed therein, and there appears to have been no formal discharge of the executor and no formal closing of the administration of the estate by the State court. As we pointed out in Joseph M. Roebling, 18 T. C. 788, 794, the continuation of the administration of the estate over a considerable period was not under the direction and approval of a State court. Therefore the provisions of section 29.162-1, Regulations 111, are particularly appropriate and we must determine from the record what is “the period required by the executor * * * to perform the ordinary duties pertaining to administration * * Respondent contends that the period of administration ended during 1947, while the petitioner contends that it lasted throughout 1949. We have determined from the evidence before us that the period of administration ended in 1948. It was in that year that the executor received the refund of estate taxes resulting from the settlement of the Chasnoff claim the year before, that the transactions incident to the leases were accomplished, and that a contract of sale was made covering the last relatively small asset of the estate, that is, the remainder of the rags. Moreover, we stress that it was in 1948 that the executor himself evidently considered the administration of the estate was ended, for it was in July of that year when a general release was obtained by him from petitioner which was considered by his counsel to be equivalent to the approval by the State court of an executor’s final account. Accordingly, the net income of the estate for 1948 became currently payable to petitioner and is taxable to her. Estate of W. G. Farrier, 15 T. C. 277. A fortiori, the net income reported by the estate in 1949, is taxable to petitioner as her own. Respondent’s contention that the net income of the estate for a year prior to the year in which administration ended (which year under our holding above is 1947) would be income to petitioner under section 162 (c), because the distributions made to petitioner by the estate in such year were in excess of the estate’s net income, must be rejected. In the instant case the decedent’s will did not provide for the distribution of the current income of the estate to the legatee pending its administration; the distributions to petitioner were not made under order of the State court pursuant to any request of petitioner for the payment of the estate’s income to her or otherwise; the distribution was charged by the executor aganst the principal of the estate; income taxes were paid by the executor on all of the net income of the estate without the taking of any deductions on account of the distributions to petitioner; and the payments to petitioner were in amounts and at times which bore no relation to the income earned and received by the estate. Under these circumstances we conclude that the distributions received by petitioner from the estate in 1947 did not constitute income of the estate which was properly paid to her and consequently taxable to her under the provisions of section 162 (c), Internal Revenue Code of 1939. Anderson's Estate v. Commissioner, 126 F. 2d 46; Dunlop v. Commissioner, 165 F. 2d 284. See Estate of Robert W. Harwood, 3 T. C. 1104. A careful study of the recent case of Horace Greeley Hill, Jr., 24 T. C. 1133, indicates that it is in accord with this conclusion. In that case the decedent’s estate in administration had a net income in 1943 of $58,829.02. In the same year it distributed $70,-932.92 to the legatees “of which $38,663.68 represented income earned in 1943.” It appears that the balance of the distribution was designated as being from income of the estate in a prior year which had properly been treated as an accretion to the corpus of the estate. The Commissioner determined that the entire amount of the net income of the estate for 1943 ($58,829.02) was taxable to the legatees. Even though the payments made to the legatees by the estate in 1943 were in excess of 'the total net income, of the estate for that year, only that part of the distributions to the legatees which was paid to them as income for that year ($38,663.68) was held to be taxable "income to them. With regard to the balance of the income of the estate for that year ($20,165.24) upon which income tax was paid by the estate, it was held not taxable to the legatees. While our discussion in that case centered on section 162 (b), we said: “And it is also,clear that section 162 (c) can not be applicable since the income in question was not, in fact, paid or accrued to petitioners during the taxable years.” Thus this case is a precedent to support the proposition that, where payments are made to legatees by an estate during the period of administration and the circumstances indicate that these payments do not represent, and are not intended to represent, the net income of the estate for the year in which the payments are made, they will not be taxable to the legatees under section 162 (c) even though the net income of the estate for the year in which the payments are made is in excess of the amounts of such payments. Having held that the net income of the estate for 1948 is taxable to petitioner, it is necessary for us to consider the contention of petitioner that the amount of the net income of the estate reported by it in that year and included by respondent in petitioner’s income should be reduced on account of the amortization of, and loss on abandonment of, certain leasehold interests owned by the decedent. Specifically the contention of the petitioner on this point may be outlined as follows: The decedent at the time of his death in April 1943 was the lessee of certain property under a lease from 123 Greene Street Corporation which had at that time a remaining life of 7 years and 10 months and was the lessor of the same property under a sublease to Empire Rayon Yarn Co., Inc., which had at that time a remaining life of 2 years and 10 months; these leases were valued for estate tax purposes at $5,582, which amount represents their fair market valué at the date of decedent’s death and thus constitutes the executor’s basis for depreciation and determining gain or loss; basing the depreciation rate on the life of the longer lease (under which the decedent was lessee) the annual depreciation allowable would be i%4 of $5,582 or $797.43 which, would result in depreciation deductible in 1948 for the first 4 months of that year in the amount of $265.81;[1] and when this lease (under which decedent was lessee) was surrendered in April 1948, the difference between the executor’s basis ($5,582) and the amount of depreciation allowable to that date ($3,987.15) constituted a deductible business loss in the amount of $1,594.85. Therefore, petitioner contends the net income of the estate for the year 1948 included by respondent in petitioner’s taxable income should be reduced by $1,860.65. The fallacy in petitioner’s contention lies in the assumption that the fair market value of the lease under which the decedent was lessee and which was surrendered in 1948 was the sum of $5,582. The only evidence as to such market value is an appraisal made of this lease and the shorter sublease expiring January 31, 1946, for estate tax purposes which we have set out in full in our findings. It is evident from this appraisal that, while it purports to value the lease and sublease together, only the sublease was considered to be valuable. After January 31,1946, the subtenant could vacate the premises without liability. Therefore, any allowable depreciation or amortization, and any loss, would be available to the estate only on account of the sublease and, in any event, not after January 31, 1946. Accordingly, the estate’s net income for 1948 should not be reduced by allowances for depreciation or by any loss on abandonment in connection with the lease surrendered in that year. In Docket No. 53980, a decision will he entered that there is no deficiency for the year 191fl, and that there is a deficiency in 'petitioner’s income tax for the year 19J¡8, in the sum of $898.55. In Docket No. 53981, decision will he entered for respondent. The figures In this paragraph are taken from petitioner’s brief.