Stella Porter Russell v. Commissioner.
Russell v. Commissioner
Docket Nos. 90331, 92556.
United States Tax Court
T.C. Memo 1962-223; 1962 Tax Ct. Memo LEXIS 87; 21 T.C.M. (CCH) 1178; T.C.M. (RIA) 62223; September 19, 1962
*87 Where petitioner was sole legatee and executrix of her husband's estate, the administration of that estate was not terminated for income tax purposes until December 31, 1959. The duties of the executrix were not completed until that date since it was reasonable for her to liquidate a close family corporation managed by her deceased husband before terminating his estate. The date of the death of petitioner's husband, Lester A. Russell, was May 29, 1955. Carswell H. Cobb, Esq., 1100 Republic Bank Bldg., Dallas, Tex., for the petitioner. J. C. Linge, Esq., for the respondent. BLACK Memorandum Opinion BLACK, Judge: The Commissioner determined deficiencies in income tax of petitioner for the years 1958 and 1959 in the amounts of $22,916.90 and $79,173.37, *88 respectively. In the notice of deficiency for 1958, the Commissioner made the following adjustments: Taxable income shown on return
$58,849.65
Additional income and unallowable
deduction: (a) Income attributed to
Estate of Lester A.
Russell
$30,551.67
(b) Medical expense
111.38
Total additions
30,663.05
Taxable income as adjusted
$89,512.70 The Commissioner set forth the following as an explanation of the adjustments: (a) It is determined that the amounts of income reported on the fiduciary income tax return filed for Estate of Lester A. Russell for the year 1958 are includible in your individual income tax return. (b) It is determined that the cost of drugs in the amount of $111.38 is not deductible since it does not exceed 1 percent of adjusted gross income. Similar adjustments were made in the notice of deficiency for 1959, differing only in amounts. The Commissioner explained the adjustment as to the additional income in part as follows: (a) It is determined that administration of the Estate of Lester A. Russell has been terminated and that the income attributed to and reported by the Estate is reportable by Mrs. Stella Porter Russell. *89 * * *
Petitioner agrees that the medical expense disallowances were proper and the only question in issue is whether or not the administration of the estate of Lester A. Russell should be considered terminated for income tax purposes prior to January 1, 1958, within the meaning of section 641 of the Internal Revenue Code of 1954. The income which the Commissioner has determined is reportable by petitioner in 1958 and 1959 was reported in income tax returns filed for the estate of Lester A. Russell for those years and taxes paid thereon. The estate has filed protective claims for refund in the amounts of $11,708.68 and $67,577.21, respectively. A stipulation of facts, together with exhibits attached thereto, was filed by the parties and is incorporated herein by this reference. Petitioner Stella Porter Russell is an individual residing in Dallas, Texas. She filed her income tax returns for the calendar years 1958 and 1959 on the cash basis with the district director of internal revenue at Dallas. Petitioner's husband, Lester A. Russell, sometimes hereinafter called Lester, died testate on May 29, 1955, and petitioner was named independent executrix *90 of his estate shortly thereafter. His will was admitted to probate on June 20, 1955. Lester bequeathed and devised all of his property to his wife Stella, petitioner herein. The estate of Lester consisted of varied interests in many tracts of real estate situated in Texas; mineral interests; corporate stocks; United States Treasury notes and bonds; bonds issued by various Texas cities and other municipal corporations; notes, mortgages, and accounts receivable on real estate sold by Lester; and miscellaneous personal property. The estate was valued at $1,225,111.01 for estate tax purposes. A principal asset of the estate was approximately 50 percent of the stock of Russell Realty Company, Inc., a Texas corporation, sometimes hereinafter called the Realty Company. Prior to his death Lester had served as president and director and had managed the Realty Company. The Realty Company had 2,000 shares of outstanding stock; 999 shares of the stock were owned by Lester and one share was owned by the petitioner herein. Of the 999 shares owned by Lesser, 666 were his separate property and 333 shares were community property. Prior to his death in 1926, 999 shares were owned by Clinto, a brother *91 of Lester, and one share was registered in the name of Clinton P. Russell, Jr., sometimes hereinafter called Clinton, Jr., the son of Clinton. The Realty Company had been chartered in 1904 for a 50-year term and its charter was extended in 1954 until June 2, 1959. At the time of Lester's death, the Realty Company had one employee and he was over 70 years of age. Upon the death of Clinton, beneficial title to 333 of his shares of the capital stock of the Realty Company passed to his widow, Hattie W. Russell; beneficial title to 333 additional shares passed to Clinton, Jr; and beneficial title to a further 333 shares passed to Catherine Russell, now Catherine Russell Stelter, the daughter of Clinton. Upon the death of Clinton, Lester qualified as independent executor of Clinton's estate and continued to administer and manage the assets of Clinton's estate until Lester died in 1955. Lester completely controlled his brother's estate, including his interests in the Realty Company. Clinton's estate was valued in excess of one million dollars at the date of Lester's death. The title to the stock of the Realty Company owned by Clinton's heirs was never put in the name of the heirs *92 during Lester's lifetime. Lester held title to the shares belonging to his brother's estate as executor with the exception of one share which was held in the name of Clinton, Jr. During the 29 years Lester controlled and operated the estate of his brother, he never made complete disclosure to the heirs of his brother of the details of the administration of Clinton's estate. He gave them a check each December for the accumulated earnings of the estate during the year but did not give them a full statement as to how the income was received. At the date of Lester's death, Clinton, Jr., was 40 years of age. He was not in any business and had not been active in the affairs of his father's estate, although he held the title of secretary and was a director of the Realty Company. Prior to the death of Lester, the heirs of Clinton retained legal counsel to have Lester account for his operations of the estate of Clinton and to force a distribution of the estate. Clinton, Jr., and his sister hired one of the leading firms of attorneys in Dallas to represent them in this dispute. These attorneys, on behalf of their clients, demanded possession of all properties belonging to the estate of Clinton *93 and an accounting for all the income and expenses of the estate during the entire period of its existence. The heirs of Clinton were to some extent concerned because at the death of Lester his community estate was valued at approximately $2,000,000 while the estate of Clinton was valued at only $1,000,000. The attorneys indicated that they proposed to surcharge the estate of Lester if the investigation disclosed that Clinton's estate was not properly administered. Pursuant to the demand of the attorneys for Clinton's heirs, petitioner's counsel, who was representing her as executrix of the estate of Lester, agreed to an audit of the records of Clinton's estate by a certified accounting firm. This audit was completed in the latter part of 1955 and indicated that Lester had properly managed Clinton's estate. After the audit petitioner's counsel delivered to the heirs of Clinton all of the securities, bonds, and stocks belonging to Clinton's estate, including Clinton's stock in the Realty Company. In 1955, Clinton's heirs delivered releases to petitioner's counsel for Lester's administration of Clinton's estate and at that time the certificates of stock in the Realty Company were *94 reissued in the names of Clinton's heirs. After Lester's death petitioner, as vice president and director, and Clinton, Jr., as secretary and director, were the sole officers and directors of the Realty Company. Due to the stalemate in voting strength between Stella and Lester's estate on the one hand and the heirs of Clinton on the other, no additional corporate officers or directors were ever elected thereafter. Pursuant to the unanimous agreement of the stockholders of the Realty Company at a special stockholders' meeting held on May 28, 1959, a resolution was adopted to completely liquidate that corporation. A certificate of dissolution of the Realty Company was executed by the Secretary of State of the State of Texas on June 1, 1959. The Realty Company had been chartered for a 50-year term and its charter expired in 1954 but had been extended to June 2, 1959. The accounting firm issued two audit reports dealing with the dissolution and liquidation of the Realty Company. The reports were issued on or about December 3, 1959, and February 10, 1960. The audit report dated as of June 1, 1959, but submitted to the Realty Company (in liquidation) December 3, 1959, includes the *95 following paragraph: The certificate numbers, stockholders, and shares outstanding at the present liquidation of the Company are as follows: Certificate
Number of
Number
Name of Stockholder
Shares
28
Mrs. Stella Porter Russell
1
29
Clinton P. Russell, Jr.
1
30
Mrs. Stella Porter Russell,
Independent Executrix of
Estate of Lester A. Rus-
sell, Deceased
999
31
Mrs. Hattie W. Russell, De-
ceased
333
32
Mrs. Catherine R. Stelter
333
33
Clinton P. Russell, Jr.
333
Total shares issued and out-
standing
2,000
The audit report of December 31, 1959, among other things, states that: This report is made for liquidation purposes and follows a previous report, of the operations as of June 1, 1959, submitted under separate cover as of December 3, 1959. * * *
GENERAL COMMENTS This Company in liquidation ceased to exist after December 31, 1959, as all assets were transferred to the liquidating stockholders prior to that time. We have included Exhibit D for the guidance of the stockholders in determining the values to be included in their personal income tax returns. This exhibit recapitulates the total of assets distributed *96 to each stockholder, and is reflected at the value determined by the trustees in liquidation at a meeting held by us with these trustees prior to liquidation. Exhibit D entitled "Russell Realty Company (In Liquidation) Distributions to Stockholders Period June 2, 1959, through December 31, 1959" which is attached to the report sets forth, among other things, the fair value applicable to stockholders' interest: Fair value applicable to stockholder's interest:
Estate of L. A. Russell
$ 906,547.86
Catherine R. Stelter
301,880.44
C. P. Russell, Jr.
302,786.98
Estate of Hattie W. Russell
301,880.44
Total
$1,813,095.72
In February 1960, the attorneys representing the heirs of Clinton sent to the attorney for the executrix of the estate of Lester the stock certificates of the Realty Company which had been issued in the names of their clients. Clinton's wife having died in the meantime, Clinton, Jr., and his sister owned the full one-half interest in the Realty Company which had belonged to their father. The shares were forwarded for cancellation. Final distribution to its stockholders took place in February 1960. A Federal estate tax return was filed on *97 behalf of Lester's estate on July 30, 1956, and the estate tax of $295,290.37 shown as due thereon was paid on or about August 24, 1956. Upon examination certain adjustments to the return were proposed by the examining estate tax agent and agreed to by Stella, resulting in an additional deficiency in estate tax of $67,555.82, which sum was paid on or about October 2, 1957. Texas inheritance taxes arising from petitioner's inheritance from Lester were paid on or about September 11, 1956, and October 25, 1957. The fiduciary income tax return for the estate of Lester for 1959 showed that $906,547.86 was received in distributions in liquidation of the Realty Company as follows: 1/2 interest in 181.26 Acres John
W. Smith Survey
$655,190.00
2 1/8% U.S. Bonds 1960
80,000.00
American Savings & Loan Assn.
Cert.
2,500.00
Cash distribution
100,000.00
1/2 Interest in Assets of Russell &
Russell
68,857.86
Total amount distributed
$906,547.86
Basis of capital stock as disclosed
by Inheritance Tax Return
522,720.00
Net Gain realized on dissolution
$383,827.86 The total amount of long-term capital gain reported, including some not here involved, equaled $418,511.42, *98 one-half of which was allocated to the estate of Lester and one-half was allocated to petitioner on a community property basis. The administration of the estate for income tax purposes was terminated at the end of December 31, 1959. The petitioner had performed all of the ordinary duties incumbent upon her as independent executrix by that time within the meaning of Section 641 of the 1954 Code. The administration of the estate was open and pending throughout the taxable years 1958 and 1959 here involved. *
*99 No claim was ever filed with the Probate Court against Lester's estate by any of the heirs of Clinton except an application by Clinton, Jr., for appointment as administrator de bonis non of his father's estate, nor was any written claim made against Lester's estate by any of Clinton's heirs. The administration of an estate shall be deemed terminated for tax purposes when the ordinary duties of administration have been completed and the assets are ready for distribution, Joseph M. Roebling 18 T.C. 788 (1952). Petitioner here contends that her administration of her husband's estate was not unduly or unreasonably prolonged and was in administration in 1958 and 1959. It is our opinion that it was not unreasonable for the administration of the estate to continue until the Realty Company was liquidated in 1959. The question as to when an estate is deemed terminated for income tax purposes is largely a question of fact to be resolved by the entire record as indicated by the following section from Income Tax Regs.: § 1.641(b)-3 Termination of estates and trusts. (a) The income of an estate of a deceased person is that which is received by the estate during the period *100 of administration or settlement. The period of administration or settlement is the period actually required by the administrator or executor to perform the ordinary duties of administration, such as the collection of assets and the payment of debts, taxes, legacies, and bequests, whether the period required is longer or shorter than the period specified under the applicable local law for the settlement of estates. * * * However, the period of administration of an estate cannot be unduly prolonged. If the administration of an estate is unreasonably prolonged, the estate is considered terminated for Federal income tax purposes after the expiration of a reasonable period for the performance by the executor of all the duties of administration. * * * Our close study and examination of the record presented here indicates to us that the administration of the estate was not unduly prolonged by keeping it open and pending until December 1959. Lester had managed and controlled the Realty Company until his death in 1955; it certainly was one of his main property interests. The only employee of that Company was of advanced age, and the assets of the Realty Company included many varied interests *101 in real estate. It was a large corporation that no longer had a person familiar, as was Lester, with its holdings to continue its operation. The nature of the assets of an estate determine to a large degree the length of time necessary before the estate may properly be wound up. Furthermore, a detailed evaluation of the assets of the Realty Company was necessary in order to determine the amount of capital gains reportable by the estate from its liquidation. The audits containing such evaluation were not completed until the latter part of 1959. Since every case must be decided on its own facts, we are convinced that the administration of Lester's estate of a total duration of approximately 4 1/2 years was not unreasonably prolonged. In this case the ordinary duties of the administration properly included, we think, the liquidation of the Realty Company which the facts show to have been, to all intents and purposes, completed at the end of December 31, 1959. ** For tax purposes we think the administration of the estate was then closed. *102 Decisions will be entered under Rule 50. Footnotes
*. The paragraph "The administration of the estate terminated for income tax purposes on December 31, 1959; the petitioner had performed all of the ordinary duties incumbent upon her as independent executrix by that date within the meaning of section 641 of the 1954 Code" was deleted and the paragraph "The administration of the estate for income tax purposes was terminated at the end of December 31, 1959. The petitioner had performed all of the ordinary duties incumbent upon her as independent executrix by that time within the meaning of Section 641↩ of the 1954 Code. The administration of the estate was open and pending throughout the taxable years 1958 and 1959 here involved" added by an official order of the Tax Court dated October 23, 1962, and signed by Judge Black.
**. The words "completed by December 31, 1959" were deleted and the words "completed at the end of December 31, 1959" added by an official order of the Tax Court dated October 23, 1962, and signed by Judge Black.↩