## CHICK et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4251.

Circuit Court of Appeals, First Circuit.

Feb. 27, 1948.

838

Robert A. B. Cook, of Boston, Mass. (Phipps, Durgin & Cook, of Boston, Mass., on the brief), for petitioners.

Helen Goodner, Sp. Asst. to the Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., Helen R. Carloss and Robert M. Weston, Sp. Assts. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This consolidated petition for review of two decisions of the Tax Court of the United States presents a single question. It is whether throughout the calendar year 1940 the estate of the petitioners' father, Isaac W. Chick, was in the process of "administration or settlement" within the meaning of § 161(a) (3)[1] of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 161(a) (3), and the Regulations promulgated thereunder[2] and therefore constituted a taxable entity for income tax purposes during that year. The facts are not in dispute and for present purposes may be summarized as follows:

The father of the petitioners died testate on March 7, 1929, leaving a substantial estate which was fully solvent. By his will and its codicils he established several trusts including one of the residue of his estate for the present sole and equal benefit of the petitioners with respect to income, and ultimately of their issue with respect to principal. The son William, one of the petitioners herein, was nominated executor of the estate and trustee of all the trusts. He qualified as executor on March 28, 1929, when the will was allowed by the Probate Court for Suffolk County, Massachusetts, and he qualified in that court as trustee soon thereafter (April 11, 1929) and gave the bonds required. All of the trusts established by the will, except that of the residue of the estate, were duly created, or the obligation to do so satisfactorily discharged, within a relatively short time after the death of the decedent.

The estate was involved in litigation over taxes and with respect to other matters as well, however, and these controversies were not all finally settled or disposed of until some time during 1937. Nevertheless the estate was not settled immediately thereafter and the trust of the residuary estate set up. Indeed the executor has never filed any account, either preliminary or final, in the probate court, he has never transferred any of the assets of the estate from himself as executor to himself as trustee of the residuary estate, nor has he ever identified any of the assets of the estate as assets of that trust. Neither has he ever paid any of the income from assets held by him as executor to himself as an individual or

[1] "§ 161. Imposition of tax. (a) Application of tax.
"The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—* * *
"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; * * *."

[2] Treasury Regulation 103, § 19.162-1
"The income of an estate of a deceased person, as dealt with in the Internal Revenue Code, is therein described as received by the estate during the period of administration or settlement thereof. The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. If an executor, who is also named as trustee, fails to obtain his discharge as executor, the period of administration continues up to the time when the duties of administration are complete and he actually assumes his duties as trustee, whether pursuant to an order of the court or not."

to his sister Mrs. Foss, the other petitioner, nor has he ever in any way earmarked, identified, or credited any of the income received by the estate as income belonging to or distributable to himself or to his sister as beneficiaries under that trust. Since 1937, at least until after the tax year 1940, the petitioners, both of whom are on the cash basis, did not report and pay federal income taxes on any of the income from the property comprising the residue of their father's estate.

Under these circumstances the Commissioner of Internal Revenue determined deficiencies in the petitioners' income taxes for the taxable year 1940 on the ground that since the executor had collected all of the assets of the estate, had paid all its legacies and debts, and there were no contingent liabilities or civil suits pending against the estate and all acts relating to its administration had been performed, except for the transfer of the residue of the estate by the executor to himself as trustee, the income of the residue of the estate was in fact trust income taxable to the petitioners individually as beneficiaries of the residuary trust as provided in § 162(b) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 162(b).[3] That is to say, the Commissioner determined under Treasury Regulation 103, § 19.162-1 supra that although the estate had never been finally settled in the Probate Court it had nevertheless ceased to exist as a taxable entity and the residuary trust had become such an entity, with the result that the income therefrom, since it was currently distributable to the petitioners as beneficiaries, was taxable to them even though no actual distribution of income had ever in fact taken place.

The petitioners thereupon separately applied to the Tax Court for relief. Before that court they conceded the facts already stated, but contended first that the Commissioner lacked legal authority to tax the income of the residue of the estate to any one other than the executor so long as the estate remained unsettled in the probate court, and second, that administration of the estate had not been unduly or unreasonably delayed in that court but on the contrary there were excellent reasons why the executor had not, at least until after 1940, settled his final account and set up the residuary trust. In support of their second contention the petitioners alleged and the Tax Court found the following facts.

At the time of his death the decedent owned 4,000 shares of the common capital stock of John H. Pray & Sons Company, a Maine corporation which for over a century had been engaged primarily in the business of selling rugs and floor coverings at retail in the City of Boston. This holding, except possibly for a few qualifying shares, constituted all of the outstanding stock of the Company, and after 1937, when the litigation in which the estate had been involved was finally terminated, it constituted the major part of the assets of the estate.

During the decade following the decedent's death the Company operated at a loss because of the advent of the depression and because the neighborhood in which its store was located deteriorated as a place for large retail establishments. In fact from 1932 through 1940, except for the year 1937, it sustained annual operating losses. Then in 1936 the executor's health broke down to such an extent that he endeavored to find a corporate trustee willing to take over the assets in his hands and run the business of the Company so that he might resign. But his search for a successor trustee proved unavailing because trust companies were unwilling to assume the responsibility for the operation of the business of the Company which ownership of

3 "§ 162 Net income
*  *  *  *  *  *  *
"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—*  *  *
"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the *  *  * beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the *  *  * beneficiaries whether distributed to them or not."

all of its capital stock entailed. In this posture of affairs the petitioners in 1937, after consultations with counsel, concluded that a forced sale of the Company at that time would result in only a nominal price for its inventories and almost nothing for its good will, which had a substantial value, and that the only satisfactory course was to continue the Company in business and to take steps to restore its former earning capacity and thus enhance its sales value. To this end the Company's place of business was moved in 1938 to a more suitable location in Boston where it has enjoyed better success, showing an operating profit since 1941.

But to compensate for losses already sustained, to pay the expenses of removal to the new location, and to provide adequate working capital, the Company on two occasions increased its capital stock by authorizing the issuance of preferred stock in the aggregate amount of $400,000. In 1936 the Company sold the petitioners $100,000 of this preferred stock at par, in 1939 it sold them $125,000 more of its stock at the same figure, and in the same year the executor, being advised that it was proper for him to do so in order to protect the estate's interest in the Company, invested $75,000 of the income of the estate from miscellaneous investments in a further purchase of the Company's preferred stock at par. The remaining $100,000 of preferred stock authorized has never been issued. The Tax Court found as a fact that "Pray & Sons Company has become more valuable to the estate since the Company's removal in 1938 to its present location."

Nevertheless the Tax Court said it was "not strongly impressed" by the reasons given by the executor for "not closing out the administration of the estate and setting up the testamentary trust, of which he had already qualified as trustee", and, considering that a reasonable time had elapsed since 1937, when all need for further administration of the estate ended with the settlement of the last claim against it, found as a fact that "The estate of Isaac W. Chick was not an estate in the process of administration at any time during 1940." Hence it sustained the Commissioner in his determination of deficiencies in the petitioners' income taxes for that year.

The Tax Court, as we read its opinion (7 T.C. 1414), rested its conclusion upon these propositions: (1) That the Regulation quoted above squarely applied; (2) That it authorized the Commissioner to decide whether an estate was still in the process of administration or settlement for income tax purposes by determining whether or not the period required by the executor or administrator to perform the ordinary duties of administration such as the collection of assets and the payment of debts and legacies had elapsed; (3) That the Regulation was valid; and (4) That the Commissioner had not abused his discretion in the way he applied it to the facts presented by the case at bar. We agree.

The section of the statute quoted at the outset of this opinion provides for the imposition of taxes upon the income received by the estates of persons deceased "during the period of administration or settlement of the estate". This, according to the petitioners, means during the period in which the estate is actually in the process of administration or settlement in the appropriate court of the particular state involved. Therefore they say that since the estate of their father was still open and unsettled in the Probate Court for Suffolk County, Massachusetts, during 1940, it was necessarily a taxable entity throughout that year, and indeed that it would have to remain such an entity until such time as the executor might see fit to settle his final account and receive his discharge in that court.

The taxing authorities have taken a different view of the statutory language just quoted. In the regulation supra the language "during the period of administration or settlement of the estate" is interpreted to mean the period actually required by the executor or administrator to perform the ordinary duties pertaining to his office, in particular the collection of assets and the payment of debts and legacies, regardless of the period specified by local law for the settlement of estates. Therefore the Commissioner, in spite of the fact that the Isaac W. Chick estate had not been finally settled in the local probate court, determined that

the estate had ceased to exist as a taxable entity by 1940, since all the ordinary duties pertaining to its administration had been completed during 1937. We think the Commissioner's interpretation of the statute is basically correct.

In view of the diverse statutory systems for the settlement of estates in effect in the several states, it seems to us that if we are to interpret the language quoted above "so as to give a uniform application to a nation-wide scheme of taxation", as we are admonished to do in Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199, we must conclude that Congress intended the Commissioner in the first instance and the Tax Court in the next to determine on the basis of actual performance of ordinary duties of administration when an estate has ceased to be in the process of "administration or settlement" and hence has ceased to exist for income tax purposes. Furthermore this interpretation of the statutory language has the additional advantage of making the determination of the existence of an estate for the purposes of income taxation depend upon the existence of objective facts rather than upon the convenience of the executor or his willingness to serve the tax advantage of the beneficiaries.

This does not mean that we endorse the proposition that Congress intended to authorize the Commissioner to determine that a given estate is no longer in the process of administration or settlement for income tax purposes when the state court having jurisdiction over the administration of decedent's estates has entered an order or decree in a regular proceeding, free from fraud, collusion or serious irregularity, continuing the administration of that estate. This proposition was before the Circuit Court of Appeals for the Fifth Circuit in Frederich v. Commissioner, 145 F.2d 796, 157 A.L.R. 841, upon which the petitioners heavily rely, but the appropriate time for us to consider it will be when it is presented. We express no opinion upon it in this case since the probate court was not asked to take and did not take any affirmative action of any kind with respect to continuing the administration of the estate here involved.

■ All we are called upon to hold here, and all we do hold, is that Congress can, and in the interest of a uniform system of federal income taxation did, clothe the Commissioner and the Tax Court with power to determine, at least absent conflicting valid affirmative action by the state court having jurisdiction in the premises, that the period of administration or settlement of an estate has terminated for income tax purposes when the executor or administrator has performed all the ordinary duties incumbent upon him in his fiduciary capacity.

■ And we find no abuse of discretion in the action taken by the Commissioner in the case at bar. While it is true that during 1940 and thereafter the executor was faced with serious business problems arising from the fact that the principal asset of the estate was all, or substantially all, of the stock of a business corporation in a precarious financial situation, nevertheless in the absence of explanation by the petitioners we are as much at a loss as the Tax Court to understand why he could not control the affairs of that corporation for his, his sister's and their descendants' ultimate benefit fully as well by voting its stock as trustee as he could by voting its stock as executor.

Furthermore the Commissioner allowed a reasonable length of time to elapse for the executor to settle his final account and wind up the estate after all claims against it were settled or disposed of before he determined that the estate had ceased to exist as a taxable entity.

We can discern no error in the determination by the Commissioner endorsed by the Tax Court that throughout 1940 the decedent's estate was no longer in the process of administration or settlement.

The decisions of the Tax Court are affirmed.