MARIN CARATAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16862.   Promulgated May 26, 1950.

*Bayley Kohlmeier, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

OPINION.

HARRON, *Judge*: There is no dispute about any of the facts. The only question is whether the net income of the estate during the years in question is taxable to the estate, or to the petitioner.

Under section 161 (a) (3) of the Internal Revenue Code,[2] income received by the estate of a deceased person is taxable to the estate during "the period of administration." The later phrase has been construed by the Commissioner to mean "the period required by the executor or the administrator to perform the ordinary duties pertaining to administration, in particular, the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates." See Supplement, Regulations 111, p. 367; sec. 29.162–1. The above construction of section 161 (a) (3) is a valid and reasonable interpretation. "The question of what constitutes the period of administration of an estate 'is not a matter of local rules of property, but one where, under *Burnet* v. *Harmel*, 287 U. S. 103, we must ascertain criteria for construction of an act of Congress, and if regulations on the subject are fairly and reasonably within the power of the Commissioner, we should look to such regulations.'" See *Estate of J. P. Armstrong*, 2 T. C. 731, 734.

The substance of the respondent's contention is that the period of administration of the estate should not be recognized; that the income thereof should be held to be taxable to the petitioner, even though there was no distribution of the estate to him until October, 1946. The respondent's contention is correct in part, but we find no merit in part of the contention, which will be discussed hereinafter. The first aspect of the question is whether "the time actually required" for the administration of the estate, i. e., for the collection of the assets and the payment of debts and legacies was less than the period from the appointment of an administrator until the Superior Court's order of distribution in October, 1946.

The decedent died on September 13, 1939. Although the final ac-

---

[2] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; &ast; &ast; &ast;

count of the administrator reported that there were allowed claims against the estate in the amount of $2,065.64, these are not explained, and we must take into consideration the statutory provisions of sections 167 and 171 of the California Civil Code that the community property is not liable for the debts of the wife contracted after marriage unless secured by a pledge or mortgage executed by the husband; and, although the separate property of the wife is liable for her debts, the decedent did not possess any separate property at the time of her death, according to the administrator's final account. Also, under section 203 of the probate code, forty days after the death of the wife the surviving husband shall have the power to sell, mortgage, and dispose of real property in the community property, unless notice is recorded that an interest is claimed by another under the wife's will. Here, the deceased wife did not leave a will. From the above, it appears at once that there would seem to be little reason for a prolonged administration of the estate of the petitioner's deceased wife. As far as we can determine, the only things which the petitioner had to do as the administrator of the estate were to pay expenses and debts and Federal and state inheritance taxes, and put the estate through administration to satisfy the requirements of the Bakersfield Abstract Co. before it would issue a policy of title insurance, the reasons for which requirement were not made clear under the stipulation of facts. Under section 1000 of the probate code, at any time after four months from the issuing of letters of administration, the administrator, or heirs, or a successor in interest may petition the court to distribute any portion of the estate. Under section 1001 of the probate code, if it appears at a hearing that the estate is but little indebted and that all inheritance taxes payable have been paid, the court shall make an order requiring the administrator to deliver such portion of the estate as the court may direct, and the court may dispense with the filing of a bond. Under section 956 of the probate code, if all debts have been paid under the first order, the court *must* direct payment of legacies and direct distribution of the estate; and administration of the estate may continue only for such time as may be reasonable if debts remain unpaid, or if, for other reasons, the estate is not in a condition to be closed.

The petitioner was appointed administrator on February 21, 1940; the Federal estate tax return became due December 13, 1940; and the first or original inventory and appraisement was filed with the Superior Court on October 21, 1940.

The evidence shows that the expenditures which the petitioner made were as follows: Funeral expenses, $525; allowed claims, $2,063.65; Federal estate tax, $6,918.51; state inheritance tax, $176.88; total, $14,013.65. Also, it shows that the one-half of the cash in the community property at the date of death was $33,032.77. That amount

included $17,000 representing one-half of the value of a grape crop at the date of death, but we may reasonably assume that the proceeds from the sale of the grape crop of the autumn of 1939 were received during 1939, or before the end of 1940. The cash in the estate was ample to cover the above disbursements. There were expenses of administration and attorney's fees which, when the estate administration was ended by court order in October, 1946, amounted to $4,852.62; but even those expenses could have been covered by the cash in the estate; and, furthermore, the net income of the estate amounted to $19,730 for the fiscal year of the estate ended August 31, 1940. The amended inventory and appraisement was filed June 11, 1941, but the change from the original inventory which it reported was slight.

The record before us fails to show that the petitioner, as the administrator, did anything in the administration of the estate after December 31, 1940, other than file an amended inventory and the final account (which was not filed until October 3, 1946), unless the item of the conversion into cash of a "Trust deed and contract of sale" for $2,430.35 was done after December 31, 1940, which appears to have been a small item.

During the entire period from the date of death until the filing of the final account of the administrator the petitioner was operating the Cecil Avenue Vineyard, and one-half of the income from such operation was reported in the fiduciary return, as set forth in the findings of fact. It appears that this was the chief work of the administrator, but it was nothing more than he would have done if the estate had been distributed to himself. In view of the above facts, the provisions of the Civil Code and of the Probate Code of California which have been referred to above, the small amounts of expenses, debts or claims, and taxes, and the adequacy of the cash in the estate to meet all of these, coupled with the fact that the petitioner was the successor to the interest of his deceased wife in the community property, and that her estate consisted chiefly of her one-half interest in the Cecil Avenue Vineyard, which the petitioner operated, we think it is entirely reasonable and even resolves all doubts in petitioner's favor to conclude that the "time actually required" to perform the "ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts," did not extend beyond August 31, 1941 (end of a fiscal year of the estate). See *William C. Chick*, 7 T. C. 1414; affd., 166 Fed. (2d) 337; certiorari denied, 334 U. S. 845; cf. *Caro du Bignon Alston*, 8 T. C. 525. There is no evidence before us to show that the estate was not in condition to be closed on or about August 31, 1941.

The respondent's chief contention is that the income of the deceased wife's one-half of the community property is taxable to the petitioner, rather than to the estate, *during the entire period of administration*

because her interest passed to him upon her death under the provisions of section 201 of the probate code.[3] Respondent relies upon *Bishop v. Commissioner*, 152 Fed. (2d) 389, which reversed *Stella Wheeler Bishop*, 4 T. C. 588. The *Bishop* case does not support the respondent's contention; it did not deal with the same question which is presented here by the respondent's theory.

In the *Bishop* case, the Commissioner's determination which was challenged by a surviving wife related to *her* one-half of certain community property. She claimed in her personal income tax return deduction for one-half of a loss sustained on the sale of the particular property during the period of administration of the estate of the deceased husband. We need not restate the facts of the *Bishop* case, but the surviving wife's claim for a deduction of one-half of the loss in question was sustained because her interest in one-half was vested in her from the date the property was acquired by the spouses as community property, sec. 161 (a), California Civil Code; and upon the death of her husband, it *belonged* to her, sec. 201, California Probate Code. See dissenting opinion, *Stella Wheeler Bishop*, *supra*, p. 591, *et seq.*

In this proceeding, petitioner's one-half interest in the community property was vested in him when it was acquired; sec. 161 (a), California Civil Code; and upon his wife's death, it *belonged* to him. Sec. 201, California Probate Code. Under section 161 (a) of the California Civil Code, a husband and a wife's respective interests in community property acquired after July 29, 1927, the effective date of the statutory provision, are "present, existing and equal interests," under the management and control of the husband. *Bishop* v. *Commissioner*, *supra*.

But in this proceeding, the question is not concerned with petitioner's one-half interest in community property. Rather, it relates to the *passing* of the one-half interest of the deceased wife. The question which was decided in the *Bishop* case was not concerned at all with the one-half interest in community property of the deceased husband which *passed*, or went to his surviving wife upon his death. The *Bishop* case is not in point, and it is unnecessary to discuss it beyond pointing out that it is distinguishable from the instant proceeding.

Generally speaking, the death of a person *effects* the *passing* of the title to property to heirs, devisees, and successors in interest, and this result obtains and exists in spite of and during the period of administration of an estate, which only postpones the taking of possession of property by the heirs or successors in interest. That is true of community property acquired by spouses in California, the title to which

---

[3] Section 201. *Succession.* Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code.

is governed by section 161 (a) of the civil code, by virtue of section 201 of the probate code; and the interest in community property of the wife, as well as of the husband, is includible in her or his estate for Federal estate tax. *Bank of America* v. *Rogan*, 33 Fed. Supp. 183. Under section 300 of the California Probate Code,[4] "When *a person* dies, the title to his property, real and personal, *passes* to the person to whom it is devised or bequeathed   *   *   *, or, in the absence of such disposition, to the persons who succeed to his estate   *   *   *." Section 161 (a) (3) of the Internal Revenue Code, in recognizing the estate of a deceased person as a taxable entity during the period of administration, is not opposed to or in conflict with the above concept. Section 161 (a) (3) of the Internal Revenue Code relates to the period during which *possession* of property is in an executor or administrator, *prior to distribution* to the successors in interest, or heirs.

Respondent advances the theory that the estate of a deceased wife may not become, or is not, subject to administration under California statutes when it consists only of her interests in community property because, upon her death, her interest *passes* to her husband. This is an original and novel theory. No authority is cited in its support. Section 300 of the probate code begins, "When *a person* dies." The term "*person*" includes both the female and the male person. The adjective "his," in section 300, must mean, therefore, "his" or "her," and, therefore, the provision which states "but all his property shall be subject to the possession of the executor or administrator and to the control of the superior court," must *include* the property of *a deceased woman*, even though the adjective "his" is used. When the antecedent of "his" is "a person," the word "his" is understood to include "her."

For the above reasons, we find no merit in respondent's theory that section 161 (a) (3) of the Internal Revenue Code should not apply to the estate of the deceased wife of the petitioner. There appears to have been some necessity for having the estate go through administration by the Superior Court. Competent counsel had advised petitioner that the Bakersfield Abstract Co. would not issue a policy of title insurance on certain real property unless there was administration of the estate, and there were matters to be done by an administrator. Nothing before us justifies a conclusion that the estate was not properly subject to administration, to the possession of the administrator who

---

[4] Section 300. *Title to decedent's estate; Possession.* When a person dies, the title to his property, real or personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division II of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division III of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code. [Enacted 1931.]

was appointed, and to the control of the Superior Court which admitted it to probate. The fact that the estate involved in this proceeding is that of a deceased wife does not, in our opinion, distinguish this proceeding from *Estate of B. Brasley Cohen*, 8 T. C. 784, 787; and *Estate of Isadore Zellerbach*, 9 T. C. 89, 95; affd. *per curiam*, 169 Fed. (2d) 275; certiorari denied, 335 U. S. 903, where the estates were those of deceased husbands, on the point that the income of real estate held by an executor or administrator is, during the period of the administration of the estate of a deceased resident of California, taxable to the estate under section 161 (a) (3) of the Internal Revenue Code. Therefore, the following observation in *Zellerbach's Estate, supra*, p. 95, applies in this proceeding:

> Although section 300 of the California probate code provides that title to the property of a deceased person passes to his heirs, devisees, or legatees, it also provides that the title so passes "subject to the possession of the executor or his administrator and to the control of the superior court for the purpose of administration, sale or other disposition" * * *.

And in the *Cohen* case, we made the observation that we believed it could not be argued seriously that the estate was not under administration. Here, we think it can not be argued seriously that the estate of the decedent was not under administration at least for a short period.

It is concluded, therefore, that the estate of the petitioner's deceased wife comes within the scope of section 161 (a) (3) of the Internal Revenue Code, and the respondent's contention to the contrary is rejected. The question is then narrowed to whether the "period of administration or settlement of the estate" extended throughout the years 1941 through 1944 (the years involved here), or was for a shorter period. That question has been disposed of under our holding above that the period actually required for administration of the estate ended on August 31, 1941.

*Decision will be entered under Rule 50.*