## OLD VIRGINIA BRICK COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5024–63. Filed August 24, 1965.

*Robert Ash and Carl F. Bauersfeld*, for the petitioner.
*Donald W. Howser*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax for the taxable years 1959, 1960, and 1961 in the respective amounts of $40,569.77, $40,900.22, and $18,714.29.

The parties having settled certain issues by stipulation, the issue remaining is whether the portion of the petitioner's stock held in 1959 in the name of the Estate of Henry Rhiel Garden was, in reality, held by a trust, thereby precluding classification of the petitioner as a "small business corporation" within the meaning of section 1371 of the Internal Revenue Code of 1954.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

The petitioner, formerly Salem Brick Co., is a corporation organized and existing under the laws of the Commonwealth of Virginia. The petitioner filed its Federal income tax returns for the taxable years 1959, 1960, and 1961 with the district director of internal revenue, Richmond, Va., reporting items of income and expense on an accrual method of accounting.

Henry Rhiel Garden died in 1941. At the time of his death he owned 421 shares of common stock and 401 shares of preferred stock of Salem Brick Co. His last will and testament provides in part as follows:

FIRST: I direct my executors hereinafter named, as soon as possible after my death, to pay my just debts, the expenses of my funeral, and of the administration of my estate.

SECOND: I give, devise and bequeath to my beloved mother, Lena Rhiel Garden, of the city of Milwaukee, Wisconsin, the sum of forty ($40) dollars each month during her life, from the income of all the rest, residue and remainder of my estate, both real and personal.

THIRD: I give, devise and bequeath to my beloved wife, Grace Tinsley Garden, during her life, any and all the balance of all the use and income of all the rest, residue and remainder of my estate, both real and personal. In the event such income shall be insufficient to maintain my said wife in the manner to which she has been accustomed immediately prior to my death, then I give, devise and be-

queath to her so much additional of the corpus of my estate as may be necessary for her such maintenance. Then and in such event, I direct my executors hereinafter named to apply, first, my stock in Salem Brick Company, Inc., a corporation of the State of Virginia, next, such of the personal property of my estate as they may deem advisable, and, finally, proceeds of the sale or encumbrance of such of my real estate as they may deem advisable to realize, for such maintenance of my wife.

FOURTH : Subject to the foregoing provisions for my mother and my wife, I give, devise and bequeath any and all the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature and description and wheresoever situated, to my beloved children, Grace Celeste Hooker, nee Garden, of Lewiston, New York, Marian Elizabeth Garden, of Salem, Virginia, Dorothy Garden, of New York City, New York, and Henry Rhiel Garden, Jr., of Salem, Virginia, an equal share and proportion thereof to each of my said children.

FIFTH : I hereby constitute and appoint my wife, Grace Tinsley Garden, my daughter, Marian Elizabeth Garden, and my son, Henry Rhiel Garden, Jr., as executors, and, if the court of probate deems it advisable after the time limited by law to make and enter a final judgment and decree of distribution pursuant to this my last will and testament, then, thereafter as testamentary trustees for the benefit of respectively, my mother and my said wife, to carry out the provisions of this my last will and testament, and it is my will and I direct that my said executors and my said trustees shall not be required to furnish any bond or security for the faithful performance of their trust as such executors or trustees, and I hereby give and grant to them, and the survivors or survivor of them, full and complete power, and hereby authorize them, or the survivors or survivor of them, to sell, dispose of, encumber and convey any and all of my estate, whether real or personal, of whatsoever nature and description and wheresoever situated, to invest and reinvest the same, to convert the real estate into personal property and the personal property into real estate, and to compromise and settle any claim or demand which may be against or in favor of my said estate, all as my said executors or trustees, or the survivors or survivor of them shall deem just, advantageous and proper, and all without application to or license from the court having jurisdiction of the probate of this my last will and testament and of the administration of my estate, to the end that the provisions of this my last will and testament may and shall be fully carried out and performed.

In 1950 Grace Tinsley Garden, Marian G. Robinson (formerly Marian Elizabeth Garden), and Henry Rhiel Garden, Jr., filed with the commissioner of accounts of the Circuit Court of Roanoke County, Va., their accounting as executors of the Estate of Henry Rhiel Garden for the period April 28, 1941 (the date they qualified as executors), to December 31, 1944. They charged themselves with principal on hand in the aggregate amount of $107,729.39, consisting of stocks in seven corporations (including the petitioner), a residence, and miscellaneous personal property. They reported the payment of funeral and administration expenses and debts of Henry Rhiel Garden in the total amount of $9,895.47. The accounting also showed that the income received, consisting of dividends and interest, was paid to the two life beneficiaries named in the will, Lena Rhiel Garden and Grace Tinsley Garden, except for the amount of $184.65 used to pay current expenses.

Also in 1950 such individuals filed accountings for the years 1945 and 1946 which showed that the income received, consisting of dividends, was paid to Lena Rhiel Garden and Grace Tinsley Garden as provided by the will, except for the amount of $193.70 to pay current expenses and the amount of $48.52 paid in 1946 for funeral expense.

In 1962 the same individuals, purporting to act as the executors of the Estate of Henry Rhiel Garden, filed an accounting covering the years 1947 through 1961 which showed that all of the income, consisting of dividends, was paid to Grace Tinsley Garden (Lena Rhiel Garden having died on December 9, 1946), except for an amount of $1,173.07 paid to Henry Rhiel Garden, Jr., in the year 1952 and referred to as "Executors Commission." In this accounting it was reported that, on June 4, 1952, 15 shares of stock of the First National Bank of New York were sold for $5,623; on July 15, 1957, 245 shares of stock of the Appalachian Electric Power Co. were sold for $21,714.89; on December 11, 1957, stock rights of Standard Oil of New Jersey were sold for $43.75; and that on December 1, 1958, 401 shares of preferred stock of Salem Brick Co., Inc., were sold (apparently redeemed by the petitioner) for $50,526. It was also reported that all of the sales proceeds were reinvested in other stock, including 80 shares of common stock of the petitioner purchased in December 1958.

Grace Tinsley Garden had been in ill health since about 1956 and her business affairs were handled by her son, Henry Rhiel Garden, Jr. She died on January 11, 1963.

In 1963 Henry Rhiel Garden, Jr., and Marian G. (Robinson) Coey (formerly Marian Elizabeth Garden), purporting to act as executors of the Estate of Henry Rhiel Garden, filed with the commissioner of accounts of the Probate Court a final statement of their fiduciary account covering the period January 1, 1963, to June 15, 1963, therein showing that all property held by them had been distributed in equal shares to the four beneficiaries in accordance with paragraph 4 of the will of Henry Rhiel Garden.

All the foregoing accountings were approved by the commissioner of accounts of the Probate Court and stood confirmed.[1]

The Probate Court did not, at any time, issue any order directing distribution of the assets held in the name of the estate or issue any order setting up a trust under the will of Henry Rhiel Garden.

During the years 1959, 1960, and 1961, the petitioner had one class of common stock with full voting powers. No other class of stock was authorized or outstanding. During those years its stock was held in the following names:

[1] Under Virginia law, no action is required by the Probate Court with respect to such accounts unless exception is taken thereto. Sec. 26–33, Virginia Code, states: "If no exceptions have been filed, the report shall stand confirmed on the day next following the expiration of the period of one month after the day on which the report was filed in the clerk's office."

|  | Shares |
|---|---|
| Henry Rhiel Garden, Jr. | 200 |
| Clarence E. and Margaret F. Birch | 66 |
| Mary Jane Zdralevich | 23 |
| Grace Garden Hooker | 49 |
| Estate of Henry Rhiel Garden, deceased | 501 |
| Total | 839 |

During the years 1959, 1960, and 1961 the petitioner paid dividends with respect to stock held in the name of Estate of Henry Rhiel Garden by checks drawn in favor of the estate. For those years the total amounts paid on such stock were in the respective amounts of $40,080, $44,589, and $12,525. Such checks were endorsed and deposited to the account of Grace Tinsley Garden.

On January 9, 1959, the petitioner filed with the district director of internal revenue at Richmond, Va., an election under section 1372(a) not to be subject to the taxes imposed by chapter 1 of the Internal Revenue Code of 1954. Consents to such election were filed by the four individual stockholders and by "Estate of H. R. Garden, By H. R. Garden, Jr."

The petitioner in its returns for the taxable years 1959, 1960, and 1961 reported no tax liability. The respondent, in the notice of deficiency, determined that the petitioner was subject to tax for each of those years, stating:

It has been determined that the corporation is subject to Federal income taxes as imposed by Section 11 of the Internal Revenue Code since it has not been established that a valid election was made under the provisions of Section 1372 of the International Revenue Code not to be subject to said taxes. Furthermore, it does not qualify as a "small business corporation" as defined in Code Section 1371 since one of its stockholders is a testamentary trust instead of an estate or an individual.

### OPINION

Section 1372(a) of the Internal Revenue Code of 1954 [2] provides that any small business corporation may elect not to be subject to the income tax imposed by chapter 1 of the Code. It further provides that such election shall be valid only if all persons who are shareholders

---

[2] Sec. 1372(a) provides:

ELIGIBILITY.—Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation—

(1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or

(2) on the day on which the election is made, if the election is made after such first day,

consent to such election.

in the corporation consent to the election. Section 1371(a) [3] defines a small business corporation as one which, among other things, does not have as a shareholder a person (other than an estate) who is not an individual.

The petitioner filed an election on January 9, 1959, pursuant to section 1372(a), and consents to such election were filed by the stockholders of record, including four individuals and the Estate of H. R. Garden. At the time of the election 501 shares of the 839 outstanding shares of the petitioner were held in the name of such estate.

The respondent determined, and contends, that the executors of the estate had long since completed their duties as executors and that at the time of the election, and during the years in question, they were holding the property of the estate as trustees for the benefit of the widow of the decedent. He therefore contends that the petitioner had a stockholder other than an individual or an estate and hence does not qualify as a small business corporation within the meaning of the statute.

The petitioner, on the other hand, contends that under the will of the decedent the executors were not to act as trustees unless the Probate Court should deem it advisable to order distribution of the assets of the estate and the creation of a trust; that the Probate Court did not take any such action; that the estate remained in existence throughout the years in question as a stockholder of the petitioner; that therefore the petitioner qualifies as a small business corporation; and that a valid election was made under section 1372(a).

Section 1.1371–1(e) of the Income Tax Regulations provides in part as follows:

*Shareholders must be individuals or estates.* A corporation in which any shareholder is a corporation, trust, or partnership does not qualify as a small business corporation. *The word "trust"* as used in this paragraph *includes all trusts subject to the provisions of subchapter* D, F, H, or J (including subpart E thereof) of chapter 1 of the Code and voting trusts. * * * [Emphasis supplied.]

Subchapter J of chapter 1 of the 1954 Code consists of sections 641 to 692, inclusive, and deals with the income taxation of estates, trusts, beneficiaries, and decedents. It seems clear that section 1.1371–1(e) of the regulations in effect adopts, as the test to be used in determining whether any of the stock of a corporation is held by a trust (rather than an estate), any regulations under subchapter J which bear upon the question of the creation or termination of estates and trusts, in-

---

[3] Sec. 1371(a) provides:

SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—

(1) have more than 10 shareholders;
(2) have as a shareholder a person (other than an estate) who is not an individual;
(3) have a nonresident alien as a shareholder; and
(4) have more than one class of stock.

cluding section 1.641(b)-3(a) of the regulations, which provides as follows:

The income of an estate of a deceased person is that which is received by the estate during the period of administration or settlement. The period of administration or settlement is the period actually required by the administrator or executor to perform the ordinary duties of administration, such as the collection of assets and the payment of debts, taxes, legacies, and bequests, whether the period required is longer or shorter than the period specified under the applicable local law for the settlement of estates. For example, where an executor who is also named as trustee under a will fails to obtain his discharge as executor, the period of administration continues only until the duties of administration are complete and he actually assumes his duties as trustee, whether or not pursuant to a court order. However, the period of administration of an estate cannot be unduly prolonged. If the administration of an estate is unreasonably prolonged, the estate is considered terminated for Federal income tax purposes after the expiration of a reasonable period for the performance by the executor of all the duties of administration. Further, an estate will be considered as terminated when all the assets have been distributed except for a reasonable amount which is set aside in good faith for the payment of unascertained or contingent liabilities and expenses (not including a claim by a beneficiary in the capacity of beneficiary).

It should be pointed out that we have upheld the validity of corresponding provisions of the regulations promulgated under section 162 of the Internal Revenue Code of 1939. *Estate of J. P. Armstrong*, 2 T.C. 731; *William C. Chick*, 7 T.C. 1414, affd. (C.A. 1) 166 F. 2d 337; *Marin Caratan*, 14 T.C. 934; and *Josephine Stewart*, 16 T.C. 1. The cases clearly establish that the question of whether, for Federal income tax purposes, an estate has terminated and a trust been created must be decided in such a manner as to give a uniform application to a nationwide scheme of taxation.[4] And it should be further pointed

---

[4] In *Estate of J. P. Armstrong*, we stated in part:

"In our opinion, this is not a matter controlled by state decisions, in that it is not a matter of local rules of property, but one where under *Burnet* v. *Harmel*, 287 U.S. 103, we must ascertain criteria for construction of an act of Congress, and if regulations upon the subject are fairly and reasonably within power of the Commissioner, we should look to such regulations. This is a case of determining whether the facts involved in a will and its probate indicate an 'estate' or a 'trust' under the Federal statute. Interpretation therefore should be so as to give 'a uniform application to a nation-wide scheme of taxation.' We think that the regulation to the effect, as above seen, that a period of administration or settlement of an estate is the period required to perform the ordinary duties pertaining to an administration, is a valid and reasonable interpretation of the statute on this subject and that since it is plain herein that, the estate having been reduced to possession and the debts of the testator having been paid, many years ago, the 'ordinary duties pertaining to administration' have long since been completed, that thereafter for the purpose of the Federal statute the executors should be considered to have continued their activities as trustees, and not longer as executors. The regulation in substance designates, for the purpose of the Federal statute, the period of administration as one depending upon actual time required to perform ordinary duties of administration; which is tantamount to saying that the estate as such lasts only during such period. We think the fact that the administration of estates may, under the Georgia law, be left open in order to carry out the wishes of the testator in matters not pertaining to ordinary administration, paying debts, winding up the estate and distributing it, can not avail to define for the purpose of the Federal statute an estate as being something more extensive than contemplated by the regulation. * * * Finding that regulation to be a valid interpretation of the statute, we conclude that on the facts herein involved the executors were in the position of trustees during the taxable year, and that the petitioner is a trust, and not an estate, under section 163(a)(1) of the Internal Revenue Code."

out that section 1.641(b)-3(a) of the regulations embodies a well settled and accepted principle of general law.[5]

It is the petitioner's position that since subchapter S, dealing with small business corporations, is a remedial statute, it should be liberally construed to carry out the purpose of Congress of relieving small business corporations of corporate income taxation, and that the respondent is not justified, in making determinations under subchapter S, in applying the regulations under subchapter J of the Code which deals with the income taxation of estates and trusts. However, both subchapters are concerned with the existence and duration of estates and trusts, and we see no reason why in that respect the same principles should not apply under both subchapters.

It is well recognized that the respondent's regulations must be sustained unless they are unreasonable and plainly inconsistent with the statute. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496. We cannot conclude that section 1.1371-1(e) of the regulations is unreasonable or plainly inconsistent with the provisions of section 1371 of the Code in requiring, in effect, that the principles of section 1.641(b)-3(a) of the regulations be applied in determining whether a trust, rather than an estate, is in reality a shareholder of a corporation for purposes of the application of subchapter S.

Applying the criteria of the regulations, we think it clear that the Estate of Henry Rhiel Garden had terminated prior to the time the election was made by the petitioner in 1959 in the instant case. The record clearly shows that by December 31, 1946, the executors had completely performed all their duties of collecting the assets and paying the funeral expenses and debts of the estate. There were no specific legacies or bequests provided in the will, and there remained thereafter nothing for them to do as executors. The same individuals were required by the will to hold the property, in accordance with the clearly expressed intent of the testator, for the benefit of his wife during her lifetime, selling such portions as might be necessary to maintain her in the manner to which she had been accustomed. Under the will they were given the power, in their discretion, to sell, dispose of, or encumber the property, and to invest and reinvest the same. All these duties were functions of trustees rather than executors.

We cannot agree with the argument made by the petitioner on brief that since none of the property could be distributed to the children

---

[5] At 1 Scott, Trusts 50, it is stated:

"The duties of a trustee are many and varied, their extent depending upon the terms of the trust. The duties of an executor are limited to the winding up of the estate of the decedent and are temporary in their character. In the absence of a statute otherwise providing, the duties of an executor are: (1) to reduce to possession the personal property of the testator; (2) to pay the testator's debts; (3) to pay legacies; and to distribute the surplus, if any, among the testator's next of kin. If a testator names the same person as executor and as trustee, he is acting as executor in performing any of these four duties; but in performing additional duties he is acting as trustee."

until the death of the decedent's wife, the estate had to remain in existence in order to make distribution to them. The mere fact that a life interest is involved does not require the continued existence of a decedent's estate. Distribution of the estate proceeds as in the case of any other property, unless, as here, the testator in his will has clearly evidenced his intent that the property shall be held in trust.

The petitioner makes much of the fact that the court took no action to cause a distribution of the assets of the estate, to discharge the executors, or to set up a trust. We do not consider this significant. Obviously the court was not requested to take any such action. See *Chick* v. *Commissioner*, (C.A. 1) 166 F. 2d 337. We have no doubt that if it had been requested to discharge the executors it would have done so but would have ordered them to hold the property in trust for the duration of the life of the widow, since such was clearly the intention of the testator.

We must conclude that at the time of the election 501 shares of the petitioner's stock were held by a trust, that the petitioner did not qualify as a small business corporation within the meaning of section 1371 of the Code, and that the election made by the petitioner was ineffective to relieve it of the taxes imposed by chapter 1 of the Code.

On brief the petitioner also states that under the third paragraph of the will the decedent's wife was granted a life estate with the absolute right to possession and control of the entire estate during her lifetime (including the right to invade corpus for her maintenance and support) and that therefore it is evident that the testator did not intend to establish a trust in the executors for the benefit of his wife, the life tenant. We find ourselves unable to agree with this analysis of the provisions of the will. As stated, we think it clear that the testator intended that his wife, his son, and his daughter should act as trustees for the purpose of managing the property for the benefit of the wife during her lifetime. But in any event we fail to see how this approach to the issue benefits the petitioner. Were we to agree that in effect the wife (and not the estate or a trust) held the property and was therefore the holder of stock of the corporation, the fact remains that she did not purport to sign any consent to the election made by the petitioner, as required by section 1372(a) of the Code.

*Decision will be entered under Rule 50.*